UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDREW S.,

                        Plaintiff,

        -against-                                    5:19-CV-0570 (LEK)

ANDREW SAUL, Commissioner of the
Social Security Administration,[1]

                        Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

This Social Security appeal is before the Court following a decision of the

Commissioner of the Social Security Administration ("SSA") ceasing Plaintiff Andrew James

Snyder's Disability Insurance Benefits ("DIB") as of December 20, 2011. Both parties have

filed briefs. Dkt. Nos. 12 ("Plaintiff's Brief"); 19 ("Defendant's Brief"); 22 ("Plaintiff's

Reply"). On appeal, the parties agree that the Court should not affirm the determination of the

Administrative Law Judge ("ALJ"). The only issue on appeal is whether the Court should

remand the case to the ALJ for further proceedings, or remand for the narrow purpose of

calculating benefits. For the reasons that follow, the Court elects the latter option.

### II.   BACKGROUND

#### A.  Regulatory Framework

The applicable substantive regulatory criteria and burdens of proof differ between the

initial grant of DIB and the cessation of DIB. Because both sets of rules are relevant in this

_____

[1]  Saul is automatically substituted for Acting Commissioner Nancy A. Berryhill as the
defendant in this case. See Fed. R. Civ. P. 25(d).

case, the Court details both below.

For purposes of an initial application, there is a five-step evaluation process for determining whether an individual is "disabled" as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. As described recently by another court in this District:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Nesiba O. v. Comm'r of Soc. Sec., No. 17-CV-931, 2019 WL 464882, at *3 (N.D.N.Y. Feb. 6, 2019) (report-recommendation); see also McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thompson, 540 U.S. 20, 24 (2003). At this initial stage, "[t]he ultimate 'burden is on the claimant to prove that he is disabled.'" Smith v. Astrue, No. 10-CV-6018, 2013 WL 1681146, at *3 (E.D.N.Y. Apr. 17, 2013) (quoting Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000)).

After a person has been found to be entitled to DIB, her entitlement is to be periodically reviewed. See 42 U.S.C. § 421(i). If there is substantial evidence that "there has been any

medical improvement in the individual's impairment or combination of impairments" that relates to his or her ability to work, such that "the individual is now able to engage in substantial gainful activity," the individual is no longer entitled to benefits. Id. § 423(f)(1). In the context of administrative determinations of medical improvement, "Congress intended the Secretary to compare an applicant's condition at the time of review with his or her condition at the time benefits were initially granted." DeLeon v. Secretary of Health & Human Services, 734 F.2d 930, 936 (2d Cir. 1984). A determination that there has been a decrease in severity "must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the individual's] impairment(s)." 20 C.F.R. § 404.1594(b)(1).

This inquiry is to be conducted in accordance with the following eight-step analysis:

> (1) If the claimant is engaging in substantial gainful activity ("SGA"), she is no longer disabled; (2) If the claimant is not engaging in SGA and has an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of 20 C.F.R. § 404, subpart P, disability will continue; (3) If the claimant does not have such a combination of impairments, the Commissioner must determine "if there has been medical improvement as shown by a decrease in medical severity . . . . If there has been no decrease in medical severity, there has been no medical improvement"; (4) If there is medical improvement, the Commissioner must determine if that medical improvement is related to the ability to work; (5) If there is no medical improvement, or the established medical improvement is unrelated to the ability to work, then disability will continue. If an exception applies, or there is medical improvement related the ability to do work, the Commissioner goes to step six; (6) The Commissioner must determine whether the claimant's impairments in combination are severe. If they are not, the claimant is no longer disabled; (7) If the claimant has a severe impairment, the Commissioner must assess the claimant's residual functional capacity and then determine if they are able to do work they have done in the past. If the claimant can do work they have done in the past, the claimant is no longer disabled; (8) If the claimant cannot do any work they have done in the past, the Commissioner must

> determine whether there is any other work the claimant can do
> given the claimant's [Residual Functional Capacity], age, education,
> and work experience. If no such work exists, the claimant's
> disability will continue. If such work does exist, the claimant's
> disability will end.

Torres v. Colvin, No. 16-CV-625, 2018 U.S. Dist. LEXIS 112691, at *7–8 (W.D.N.Y. Jul. 5,

2018) (citing 20 C.F.R. § 404.1594(f)). "The burden rests with the Commissioner at every step

to show, by substantial evidence, that a medical improvement has occurred." See Galente v.

Acting Comm'r of Soc. Sec., No. 16-CV-9981, 2018 WL 852113, at *11 (S.D.N.Y. Feb. 12,

2018) (citing Baker v. Comm'r of Soc. Sec., No. 12-CV-1715, WL 1280306, at *5 (N.D.N.Y.

Mar. 27, 2014)); see also McColl v. Saul, No. 18-CV-4376, 2019 WL 4727449, at *15 n.13

(E.D.N.Y. Sept. 27, 2019) (collecting cases holding that the burden is on the Commissioner to

demonstrate medical improvement).

### B.  Procedural History

This case has a complex, decade-long procedural history that includes four ALJ

decisions, one remand by this court, and two remands by the Social Security Appeals Council.

The Court recounts this history below.

#### 1. Initial DIB Application, 2011 Denial, and 2014 Reversal and Remand

Snyder is a former member of the Marine Corps who suffered a back injury while on a

training mission. Dkt. No. 11 ("Record") at 708.[2] He last worked for his family business in

May 2010 as a part-time service technician and officer worker. Id. at 31. He maintains that he

had to stop working due to absences and an inability to perform his duties. Id. at 31–32. Snyder

---

[2] The administrative record has been filed as a series of exhibits rather than a single
document. For simplicity, the Court cites to the Record as if it is a single uploaded document.

applied for DIB on September 23, 2010, alleging disability beginning in May 2010 based on a variety of physical and psychiatric conditions, including herniated/bulging discs, spinal stinosis, degenerative disc disease, plantar fasciitis, and depression. Id. at 112.

On December 12, 2011, ALJ Marie Greener issued a decision finding Snyder not disabled at any time since his alleged disability onset date. Id. at 10–20 ("2011 ALJ Decision"). Among other findings, ALJ Greener determined at step two of the five-step sequential disability evaluation process that Snyder did not have any severe mental impairment. Id. at 12–14. ALJ Green found that Snyder had severe physical impairments for purposes of step two, namely "lumbar condition" and "plantar fasciitis," but found at step four that he nevertheless had "residual functional capacity" (RFC) to perform his past work. Id. at 14–19.[3]

On July 8, 2014, the Honorable Earl S. Hines, United States Magistrate Judge, reversed

---

[3] One retired Social Security appeals judge has helpfully described RFC as follows:

> The RFC is a detailed, function-by-function description of all work-related physical and mental activities which the claimant is able to perform despite her impairments. . . . [T]he ALJ, at step four, determines whether the RFC allows the claimant to perform her past relevant work (PRW). In addition to requiring the ALJ to determine and provide detailed rationale for the claimant's RFC, the ALJ must also obtain a detailed description of the physical and mental requirements of the past work, along with a description of the environmental aspects of the past work . . . Then, the ALJ compares all of the physical and mental aspects of the claimant's RFC to all of the physical and mental requirements of all of the claimant's past relevant occupations. If the ALJ determines that the claimant can perform at least one of the occupations that meet the criteria of PRW, the claim is denied. If the adjudicator determines that the claimant cannot perform her PRW, the sequential evaluation proceeds to the fifth and final step.

Ken Matheny, *The Social Security Disability Appeals Backlog Crisis and the Necessity of Radical Reform*, 45 Cap. U.L. Rev. 361, 365-366 (2017).

5

the 2011 ALJ Decision and remanded for further proceedings, primarily based on a

determination that the ALJ's finding that Snyder lacked a severe mental impairment was not

supported by substantial evidence. See Snyder v. Colvin, No. 13-CV-585, Dkt. No. 13 at 4–8

(N.D.N.Y. May 21, 2014) ("2014 MJ Order"), report and recommendation adopted by No. 13-

CV-575, Dkt. No. 15 (N.D.N.Y. Jul. 8, 2014). Specifically, Judge Hines found that ALJ

Greener had ignored the opinions of two mental health professionals regarding the functional

effects of Snyder's depression, both of which tended to support Snyder's position. Id. at 8.

Instead, ALJ Greener had improperly based her conclusion entirely on her own contrary

psychiatric diagnosis, without citing any medical evidence in the record. See id. at 4; R. at 13.

Moreover, Judge Hines found, because these overlooked medical opinions likely were relevant

to RFC analysis, the ALJ's failure to consider them was not harmless error. 2014 MJ Order at

9–11.[4]

---

[4] Additionally, Judge Hines noted In dicta that ALJ Greener had not accounted properly
for the physical medical evidence in the context of her RFC analysis. Id. at 12–13 ("From a
prophylactic perspective . . . it is appropriate to mention that ALJ Greener's weighting of medical
opinion evidence sends up red flags signaling that a residual functional capacity finding of ability
to perform a full range of sedentary work may be vulnerable and unable to withstand judicial
scrutiny.") (emphasis omitted). Judge Hines noted, first, that ALJ Greener had pre-judged the
medical evidence bearing on Snyder's physical limitations. Id. at 13. ALJ Greener stated that she
gave controlling weight to two medical expert opinions "because they were consistent with her
assessed residual functional capacity for sedentary work activities." Id.; see also R. at 17
("William's opinion is given great weight because it is entirely consistent with sedentary work
activities."). As Judge Hines noted, "ALJ Greener put the cart before the horse. Residual functional
capacity is determined after and in light of credible medical evidence, not before." See 2014 MJ
Order at 13.
    Judge Hines further observed that ALJ Greener had mischaracterized the two medical
experts' opinions, omitting mention of aspects of these experts' opinions in which they had
described physical limitations resulting from Snyder's physical impairments. See id. at 14.
Specifically, these medical professionals had recommended that Snyder should never balance,
kneel, crouch, crawl, or stoop and only occasionally climb stairs, and had opined that Snyder was
moderately limited with respect to bending, lifting, prolonged standing, and walking. See id.

Judge Hines reversed the 2011 ALJ Decision and remanded for further proceedings consistent with the 2014 MJ Order.

### 2. *2015 ALJ Decision and 2016 Appeals Council Remand*

On remand, ALJ Greener determined that Snyder was disabled beginning on his alleged disability onset date and through the date of the 2011 decision, but that he experienced medical improvement justifying the cessation of DIB one week after the 2011 decision, on December 20, 2011. R. at 775–93 ("2015 ALJ Decision").

ALJ Greener noted in her step two analysis that Snyder had the following severe impairments between May 31, 2010 and December 19, 2011: "degenerative disc disease of the cervical, lumbar, and thoracic spine, plantar fasciitis, and a depressive disorder." Id. at 779. With respect to Snyder's RFC, the ALJ found that his physical impairments did not by themselves preclude him from performing his past work. Id. at 782–84. The ALJ found, rather, that Snyder was disabled during this period "primarily due to his mental work-related functional limitations." Id. at 782. ALJ Greener found, in short, that "[a]lthough there [was] no evidence of consistent or ongoing mental health treatment," there was extensive medical documentation of Snyder reporting physical pain that affected his ability to concentrate, interact with others, and focus, and that caused depression and difficulty sleeping. Id.

However, ALJ Greener found both that Snyder ceased having a severe mental impairment on December 20, 2011, and that he acquired the RFC to perform his past work on that date, partly because he no longer had sufficient work-related mental functional limitations. See id. at 786–87, 790. To support these conclusions, ALJ Greener cited, first, orthopedic notes

from September 20, 2011 and December 20, 2011 indicating Snyder's subjective reports that

his prescribed pain medication had mitigated his pain to some degree. Id. at 786. Second, ALJ

Greener cited a September 2014 opinion of consultative psychological examiner Jeanne

Shapiro that ALJ Greener determined showed Snyder had no work-related mental functional

limitations. Id. at 790.

The Appeals Council found that there was not substantial evidence to support ALJ

Greener's conclusion that medical improvement had occurred on December 20, 2011. Id. at

801–02 ("2016 Appeals Council Order"). Among other findings, the Appeals Council

determined that "[w]hile the record contains a psychological consultative report dated

September 23, 2014 from Jeanne Shapiro, PhD., which shows the claimant's mental condition

may not be as severe as it was previously, there is no clear psychological opinion, report, or

other type of evidence showing the claimant's mental condition improved as of December 20,

2011." Id. at 801–02. The Appeals Council remanded with instructions that the ALJ "[r]eassess

whether medical improvement occurred and obtain evidence from a mental medical expert to

assist in this evaluation." Id. at 802.

*3. 2017 ALJ Decision and 2018 Appeals Council Remand*

On January 13, 2017, ALJ Bruce Fein issued a decision affirming that medical

improvement occurred on December 20, 2011. See R. at 807–18 ("2017 ALJ Decision").

It appears that ALJ Fein's conclusion regarding medical improvement was based

primarily on psychiatrist Dr. Edward Halperin's 2016 response to a medical interrogatory. See

R. at 814–15. Halperin determined after reviewing Snyder's medical records dating back to

2010 that these records failed to establish disabling mental limitations. See R. at 2825–29.

Beyond this conclusion itself, little information can be gleaned Halperin's brief notes. See id.

ALJ Fein also examined treatment notes from several doctors between 2014 and 2016. The ALJ again noted Shapiro's September 2014 report. See R. at 812. He also discussed an April 2014 report from physician assistant Jeffrey Roy, in which Roy noted concerns about Snyder's oxycodone dosage and advised that Snyder's depression could be affecting his chronic pain symptoms. See id. ALJ Fein further discussed notes from a 2016 visit with Lisa Wolcott, a licensed clinical social worker, indicating that Snyder denied concerns with depression at that time and that Wolcott had suggested to him that his anxiety symptoms might be related to nicotine withdrawal. See id. at 813.

On January 16, 2018, the Appeals Council issued a second remand order. Among other findings, the Appeals Council determined that none of the evidence ALJ Fein considered shed light on the date of medical improvement. Id. at 830 ("2018 Appeals Council Order"). In reference to Dr. Halperin's report, the 2018 Appeals Council Order noted that "the evidence provided did not address the question of when medical improvement occurred." Id. More broadly, the Appeals Council found that "the Administrative Law Judge's conclusion that the claimant reached medical improvement on December 20, 2011 is not supported by substantial evidence," because, as before, "there is no clear psychological opinion, report, or other type of evidence showing the claimant's medical condition improved as of December 20, 2011." Id. The Appeals Council remanded, with instructions to "reassess whether mental improvement occurred on December 20, 2011 and obtain evidence from a mental medical expert to assist in this evaluation." Id.

*4. 2019 ALJ Decision*

9

On February 6 2019, ALJ Fein issued the decision that is the subject of this Memorandum-Decision and Order, again determining that medical improvement occurred on December 20, 2011. See R. at 569–89 ("2019 ALJ Decision").

The primary new medical evidence underlying this decision was a series of answers to interrogatories by psychiatrist Mary Eileen Buban, who reviewed Snyder's medical records between 2010 and 2017. See id. at 578, 586–87, 3068–70, 3078–82, 3144–46, 3163–68. Dr. Buban highlighted, among other aspects of Snyder's medical record, a negative Post-Traumatic Stress Disorder ("PTSD") screening on February 25, 2011, a negative screening for alcohol and depression on May 2, 2012, and a negative finding for depression on March 27, 2014. Id. at 3076. Based on her review of these 2010-2017 records, Dr. Buban found no evidence of limitations in Snyder's abilities to understand, remember, and carry out instructions; no limits in his ability to interact appropriately with supervisors, co-workers, and the public; no limits in his ability to respond to changes in the routine work setting; and no more than mild limits resulting from depression, anxiety, or Attention Deficit/Hyperactivity Disorder at any point since May 2010, until December 8, 2016, at which time Snyder reported a significant increase in anxiety due to the tapering of his pain medication. See R. at 319–62, 3068–69, 3072, 3078, 3144–45, 3163, 3418; Def.'s Br. at 15–16. Dr. Buban testified at the hearing in that case that her report documented continuous medical improvement between Snyder's disability onset date and December 8, 2016. R. at 618; see also Def.'s Br. at 16 ("Dr. Buban testified that the medical record documented continuous medical improvement through December 8, 2016").

The Commissioner concedes, first, that ALJ Fein committed legal error by applying the wrong legal standard in the 2019 ALJ Decision. See Def's Br. at 6. Specifically, ALJ Fein

applied the five-step test for initial disability determinations in applications for benefits, rather than the eight-step medical improvement standard. See generally 2019 ALJ Decision.

The Commissioner also concedes that Dr. Buban's report did not precisely address the issue at hand, namely whether Snyder experienced medical improvement with respect to mental limitations arising from physical pain. As The Commissioner explains, "Dr. Buban's review did not address Snyder's physical medical treatment records, except to the extent they captured mental health-related findings, or consider whether his physical conditions likely resulted in mental functional symptoms and limitations beyond those clearly documented in the mental health records." Def.'s Br. at 12. In other words, Dr. Buban's report was only tangentially relevant, because it did not address Snyder's mental limitations rooted in his chronic pain, but rather attempted to track the trajectory of free-standing psychiatric conditions.

Snyder highlights some additional deficiencies in ALJ Fein's review of the evidence. Notably, the ALJ did not mention a November 30, 2018 report from psychiatrist Dr. Jeannine Bordonaro, in which she opined as follows, based on her own treatment of Snyder since March 24, 2017 as well as her review of Snyder's records between 2009 and 2018 from his visits with Dr. Wolcott: "I see no appreciable difference in terms of his mental level of functioning since [2009] . . . Mr. Snyder has been struggling with psychiatric symptoms for many years and will likely need ongoing treatment." R. at 3278. As ALJ Fein noted, Snyder met with Dr. Wolcott twelve times over the period referenced by Dr. Bordonaro. See id. at 583.

III.    LEGAL STANDARD

11

When a district court reviews an ALJ's decision, it must determine whether the ALJ applied the correct legal standards and whether their decision is supported by substantial evidence in the record. See 42 U.S.C. § 405(g). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court will defer to the ALJ's decision if it is supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a *de novo* review." Sixberry v. Colvin, No. 12-CV-1231, 2013 U.S. Dist. LEXIS 134688, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). A court generally should not uphold the ALJ's decision if it is based on legal error. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

## IV.    DISCUSSION

Whether remand for further administrative proceedings is warranted essentially depends on whether the Commissioner is likely to be able to substantiate medical improvement upon remand. See Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand."); Rosa v. Callahan, 168 F.3d 72, 83 (2nd Cir. 1999) ("[W]here this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits."). Given that this case has been pending for a significant amount of time, the Court would be disinclined to prolong the case further if it appeared that the Commissioner's position were irredeemably meritless or if it otherwise seemed unlikely that further proceedings would be productive. If it appeared, on the other hand,

that the Commissioner's position likely had merit, and that one additional proceeding were likely to enable the Commissioner to demonstrate medical improvement, the Court would be inclined to authorize further proceedings.

In determining whether further proceedings are warranted, the Court examines the procedural history of this case, to ascertain the cause of delay so far, and reviews the 2019 ALJ Decision, to assess the strength of the evidence the Commissioner currently presents. A close inspection of this history reveals that the reason for delay in this case is that the conclusion the Commissioner has repeatedly tried and failed to prove—that medical improvement occurred on December 20, 2011—is unsupportable. Because further administrative proceedings are likely to impose pointless delay at significant prejudice to Snyder, the Court remands solely for the calculation of benefits.

### A.  Standards Governing the Propriety of Remand

The parties suggest somewhat different, although ultimately complementary, legal standards pertaining to this inquiry. The Commissioner maintains that remand for further proceedings is generally warranted when the ALJ commits legal error or when there are gaps in the administrative record, and that remand for the calculation of benefits is generally warranted when the Court has no basis to conclude that a more complete administrative record would support the Commissioner's determination. See Def.'s Br. at 6–7 (citing, *inter alia*, Rosa, 168 F.3d at 82–83). Snyder, in addition to emphasizing his view that the cessation case is fundamentally meritless and that further proceedings are thus futile, also emphasizes the significant length of this case's pendency. See Pl.'s Br. at 11.

The Court accepts the Commissioner's proffered principles as far as they go, although

13

they require further refinement. First, whether further development of the administrative record

is unlikely to support the Commissioner's position depends in part on whose position the

*current* record tends to support; if the current record decidedly favors the claimant's position,

then remanding to enable the ALJ to fish for evidence justifying the denial of benefits is

generally inappropriate. See Dolcetti v. Berryhill, No. 17-CV-1820, 2019 WL 2402951, at *13

(D. Conn. June 7, 2019) ("Where application of the correct legal standard could lead to only

one conclusion, we need not remand.") (quoting Schaal, 134 F.3d at 504) (internal alteration

omitted).

Second, to refine this principle further, what it means for the existing record to favor the

claimant logically must depend in part on "the procedural posture of a case, and particularly

which party bears the burden of proof and production on issues of disability." Diaz v. Berryhill,

388 F. Supp. 3d 382, 390–392 (M.D. Pa. 2019). In deciding whether to remand in the context

of an administrative determination that a claimant is not disabled at the initial application stage,

the Court should consider whether "the record provides persuasive proof of disability." See

Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). But in a medical improvement case, in

which "[t]he burden rests with the Commissioner at every step to show, by substantial

evidence, that a medical improvement has occurred," Galente, 2018 WL 852113, at *11, the

inquiry must be whether the existing record clearly does not show medical improvement. If, for

instance, the Commissioner has clearly failed to develop evidence of decreased medical

severity as of the alleged date of medical improvement, remand for the calculation of benefits

in theory could be warranted even if the claimant points to no positive evidence of disability

after the alleged medical improvement date.[5]

As Snyder emphasizes, courts additionally take the age of a case into account. See, e.g.,
LaVenture v. Berryhill, No. 17-CV-443, 2018 WL 3727355, at *4 (N.D.N.Y. Aug. 6, 2018)
(Kahn, J.) ("[B]earing in mind that these proceedings have now continued for nearly a decade,
the Court agrees with Plaintiff that no useful purpose would be served by a remand, and that a
directed verdict is more appropriate."); McClain v. Barnhart, 299 F. Supp. 2d 309, 330
(S.D.N.Y. 2004) ("The lengthy [nine-year] delay in the resolution of [plaintiff's] claim further
persuades [the court] that the case is properly disposed by remanding solely for the calculation
of benefits."). Moreover, it seems appropriate to consider both the amount of time that a case
has been pending and the number of appeals and remands in the case's history. See, e.g.
Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (finding that remand for the calculation of
benefits was proper partly because the process had already taken ten years and had included

---

[5]    If the rule were otherwise, the Commissioner could initiate a frivolous cessation
proceeding and burden a rightful beneficiary with continual remands until she re-demonstrates her
"disabled" status. This burden on the statutory right to DIB would, in practical effect, contravene
the principle that "[o]nce a claimant establishes the existence of a disabling condition . . . a
claimant is entitled to a presumption that the classification will not change unless the condition,
governing statutes, or regulations change." Carbone v. Astrue, No. 08-CV-2376, 2010 WL
3398960, at *12 (E.D.N.Y. Aug. 26, 2010) (quoting DeLeon, 734 F.2d at 937). Like this
presumption itself, the incorporation of this presumption into the determination of the propriety
of remand in a medical improvement case serves the policy goal of precluding arbitrary agency
action, by giving finality to the initial disability adjudication and preventing the agency from
disturbing a claimant's entitlement to benefits on a whim. See Serrano v. Colvin, No. 16-CV-6295,
2018 WL 1440540, at *3 (E.D.N.Y. Mar. 22, 2018) (noting that "[t]he Second Circuit adopted this
medical improvement standard because it did not want benefits to be terminated 'simply on the
whim of a changed ALJ.'") (quoting DeLeon, 734 F.2d at 937); Turner v. Heckler, 592 F. Supp.
599, 607 (N.D. Ind. 1984) ("The application of a medical improvement standard lends integrity
and finality to the prior adjudicative process. To terminate benefits without a showing of medical
improvement is to terminate on a 'whim, caprice or an impermissible relitigation of facts and
determinations already decided.'") (quoting Musgrove v. Schweiker, 552 F. Supp. 104, 106 (E.D.
Pa. 1982)).

two ALJ hearings, two petitions to the appeals council, two appeals to the district court, and one appeal to a federal court of appeals); Diaz, 388 F. Supp. 3d at 391 (noting that "courts measure this delay both in terms of the passage of years and by reference to whether there have been prior appeals and remands," and collecting cases).

**B. The Parties' Competing Narratives of the Procedural History**

The parties offer competing characterizations of the procedural history of this case. By Snyder's account, the SSA has tried repeatedly to deny him benefits to which he is legally entitled, each time being rebuked by the Appeals Council or this Court for committing legal errors and or ignoring crucial medical evidence. See Pl.'s Br. at 6–11. The Commissioner, while acknowledging a string of regrettable administrative errors, insists that these blunders are essentially attributable to miscommunications between the ALJ and the Appeals Council and to a history of confusing remand instructions. See Def.'s Br. at 6–20. The Commissioner suggests that if the Court communicated clear instructions to the ALJ, informed by a proper understanding of the governing regulations, Snyder's case could reach a legally sound resolution without only minimal further delay. Specifically, the Commissioner exhorts the Court to instruct the ALJ to obtain "a physical medical expert's review of the lengthy and complex medical record, with an opinion as to Plaintiff's resulting mental functional limitations," and insists that such an addition to the record "would plainly help to assure the proper disposition of his claim." Def.'s Br. at 12.

Because the precise reason for the delayed administrative resolution of this case is relevant to the Court's choice between remand and reversal, the Court addresses the parties' competing narratives of this case's procedural history. Ultimately, the Court finds Snyder's

16

characterization to be closer to the truth.

*1.  2015 ALJ Decision and 2016 Appeals Council Remand*

In the 2015 ALJ Decision, ALJ Greener found that medical improvement occurred on

December 20, 2011. The Appeals Council found that this conclusion was not supported by

substantial evidence. Specifically, the Appeals Council determined that "[w]hile the record

contains a psychological consultative report dated September 23, 2014 from Jeanne Shapiro,

PhD., which shows the claimant's mental condition may not be as severe as it was previously,

there is no clear psychological opinion, report, or other type of evidence showing the

claimant's mental condition improved as of December 20, 2011." Id. at 801–02. The Appeals

Council remanded with instructions that the ALJ "[r]eassess whether medical improvement

occurred and obtain evidence from a mental medical expert to assist in this evaluation." Id. at

802.

The Commissioner maintains that the Appeals Council misunderstood the regulatory

basis for the ALJ's conclusion regarding medical improvement and accordingly gave

misinformed remand instructions that complicated the resolution of the case. See Def.'s Br. at

8–9. To understand the Commissioner's critique of the 2016 Appeals Council Order, some

regulatory background is necessary.

In evaluating Snyder's complaints of pain and resulting mental functional limitations,

the ALJ was guided by Social Security Ruling ("SSR") No. 96-7p. This regulation, which has

since been rescinded and replaced with an SSA ruling that is essentially similar, provided

standards governing the assessment of symptoms of a claimant's physical or mental

impairments and the effect of such symptoms on the claimant's ability to function at work. See

17

2 Social Security Practice Guide § 14.01(1)(b) (2020).[6] Symptoms are defined as the claimant's "own description of [his or her] physical or mental impairment." 20 C.F.R. § 404.1502(i).

In assessing symptoms in the context of RFC analysis, an ALJ is to use a two-step process. First, the ALJ must determine whether an "underlying medically determinable physical or mental impairment(s) . . . could reasonably be expected to produce an individual's symptoms[.]" SSR No. 16-3p, 2016 SSR LEXIS 4 at *3. Second, the "intensity and persistence of those symptoms" are examined "to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." Id.; 20 C.F.R. § 404.1529. In the second step, the ALJ is to consider "all of the available evidence," 20 C.F.R. § 404.1529(a), which includes "information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [SSA] employees and other persons," id. § 404.1529(c)(3). Other relevant factors include the claimant's daily activities; the "location, duration, frequency, and intensity of [the claimant's] . . . symptoms"; treatments and measures used to alleviate the symptoms; "[p]recipitating and aggravating factors"; and the effectiveness of medications. Id. ALJ Greener applied this two-step inquiry and found against Snyder at the second step. See R. at 781.

The Commissioner argues that the Appeals Council's findings and instructions exhibited a mistaken belief that the ALJ had found medical improvement on the basis of a

---

[6] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p, 1996 SSR LEXIS 4. See SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 28, 2016). The primary difference between these two regulations is linguistic: the current version eliminates the use of the term "credibility" in describing the object of this inquiry; and the regulations are otherwise essentially similar. See Social Security Practice Guide § 14.01(1)(b); Henderson v. Colvin, No. 16-CV-5458, 2018 WL 1229707, at *12 n.6 (S.D.N.Y. Mar. 5, 2018); Montgomery v. Berryhill, No. 16-CV-126, 2017 WL 2191587, at *6 n.3 (D. Vt. May 18, 2017).

decrease in the severity of Snyder's medically documented depression or its functional effects, as opposed to a decrease in the functionally limiting effect of Snyder's pain-based mental limitations. Def.'s Br. at 10–11. Moreover, by the Commissioner's account, ALJ Greener found Snyder disabled during the 2010-2011 period based primarily on the consistency of Snyder's subjective complaints of pain and resulting mental limitations, rather than on some more objective form of medical evidence, and likewise found medical improvement based on subsequent inconsistency of such subjective complaints to medical professionals. Id. Because, by the Commissioner's account, there was not "any significant medical documentation" of these mental limitations in the 2010-2011 period of disability, the Commissioner seems to argue that the Appeals Council's directive that the ALJ obtain "evidence from a mental medical expert" to document medical improvement after December 20, 2011 was incoherent. Id.

To the contrary, *the Commissioner's* characterization of the Appeals Council's findings is incoherent, for multiple reasons. First, medical professionals' 2010-2011 assessments based on Snyder's subjective reports of psychological symptoms—the very evidence that Judge Hines found ALJ Greener had ignored in her 2011 decision, and that she subsequently considered upon remand—could be fairly characterized as "evidence from a mental medical expert." The Commissioner appears to make a distinction between medical reports based on Snyder's subjective complaints to medical professionals and some sort of more objective medical documentation, and to suggest that the Appeals Council was referring only to the latter. But this distinction is untenable in the context of psychiatric symptoms, which are by necessity largely based on a patient's subjective complaints. Moreover, the Appeals Council correctly recognized that in assessing symptoms under SSR 96-7p and § 404.1529(c)(3), the ALJ was

19

supposed to consider reports from medical professionals, among other forms of evidence. See §
404.1529(c)(3) (providing that in making a credibility determination, the ALJ will consider
"information about your prior work record, your statements about your symptoms, *evidence
submitted by your medical sources*, and observations by our employees and other persons")
(emphasis added). There is thus nothing confusing or counter-productive about the Appeals
Council directing the ALJ to obtain more "evidence from a mental medical expert" to support
the alleged date of medical improvement.

Second, the Commissioner fails to appreciate that the Appeals Council found not just
that ALJ Greener had failed to provide expert medical reports to justify the medical
improvement date of December 21, 2011, but further that there was "no clear psychological
opinion, report, or *other type of evidence* showing the claimant's mental condition improved as
of December 20, 2011." R. at 801–02 (emphasis added). Surely, the ALJ's assessment of what
the Commissioner refers to as the "consistency of Plaintiff's subjective complaints," see Def.'s
Br. at 10, at the very least falls under this catch-all.

This brings the Court to a discussion of what *the Commissioner* has misunderstood
about the 2016 Appeals Council Order. The Appeals Council found error not in ALJ Greener's
failure to support her findings regarding mental symptoms with a specific type of medical
evidence, but rather in her failure to provide *any evidence at all* to justify her selection of
December 20, 2011 as the date of medical improvement with respect to mental symptoms. The
ALJ picked a date of medical improvement that was conveniently immediately after her 2011
decision, a decision whose conclusions regarding Snyder's mental impairments and functional
limitations Judge Hines had determined were unsupported by the medical evidence as of that

date. To substantiate the selection of December 20, 2011 as a date of improvement in Snyder's mental limitations resulting from his physical pain, the only mental medical evidence ALJ Greener offered was Shapiro's report, which was produced roughly *three years later*. The alleged date of medical improvement was, in other words, arbitrarily selected.

### 2. 2017 ALJ Decision and 2018 Appeals Council Remand

In the 2017 ALJ Decision, ALJ Fein attempted to substantiate ALJ Greener's conclusion that medical improvement occurred on December 20, 2011. The Appeals Council found that ALJ Fein's new evidence, namely Dr. Halperin's 2016 summary of the medical record, did not close the evidentiary gap the Appeals Council had identified in 2016.  In reference to Dr. Halperin's report, the 2018 Appeals Council Order noted that "the evidence provided did not address the question of when medical improvement occurred." Id. More broadly, the Appeals Council found that "the Administrative Law Judge's conclusion that the claimant reached medical improvement on December 20, 2011 is not supported by substantial evidence," because, as before, "there is no clear psychological opinion, report, or other type of evidence showing the claimant's medical condition improved as of December 20, 2011." Id.

The Appeals Council's determination that ALJ Fein's finding of medical improvement as of December 20, 2011 was not supported by substantial evidence appears to unassailable. Dr. Halperin's cursory report failed to discuss the significance of any date in particular with respect to Snyder's alleged medical improvement. And all other medical evidence discussed, to the extent that it tended to indicate improved mental function, could only have demonstrated medical improvement beginning at some point between 2014 and 2016. The Government again accuses the Appeals Council of having misunderstood SSA regulations regarding the

evaluation of symptoms, see Def.'s Br. at 11, but this assertion is unfounded, for the same reasons as before. The Appeals Council correctly found that the 2017 ALJ Decision failed to provide evidence supporting the alleged date of medical improvement, because all of the medical evidence considered either pertained to an irrelevant date or was not tied to a specific date.

###### 3. The 2019 ALJ Decision

The 2019 ALJ Decision, which the parties agree is both legally flawed and not supported by substantial evidence, deepens the Court's doubts about the provability of the Commissioner's case. ALJ Feiner wrote a lengthy opinion that both summarized all the evidence of medical improvement proffered so far and analyzed Dr. Buban's extensive new report. Yet evidentiary support for the alleged December 20, 2011 date of medical improvement remains elusive.

The parties agree, as does the Court, that ALJ Fein erred in applying the five-step analysis applicable to initial disability determinations, rather than the eight-step medical improvement framework. But courts often perform substantial evidence review in spite of this precise legal error. See, e.g., LaVenture v. Berryhill, No.17-CV-443, 2018 WL 3727355, at *3 (N.D.N.Y. Aug. 6, 2018) (Kahn, J.) (noting that "[c]ourts in this District have found that an ALJ's decision will be sufficient, even when it fails to employ the recognized eight-step medical improvement test, if it provides an analysis with 'enough information to enable th[e] court to determine whether [the ALJ] made the requisite findings'") (quoting Crowell v. Astrue, No. 08-CV-8019, 2010 WL 7765355, at *14 (S.D.N.Y. July 23, 2010)); O'Connor v. Astrue, No. 07-CV-141, 2009 WL 3273887, at *4 (W.D.N.Y. Oct. 9, 2009) (analyzing the

ALJ's decision in its entirety to ascertain whether a finding of medical improvement was supported by substantial evidence, even though the ALJ did not employ the applicable eight-step analysis); see also Vargas v. Astrue, No. 09-CV-6606, 2011 WL 9518014, at *12 (S.D.N.Y. Nov. 8, 2011) ("In situations where the ALJ's analysis contains enough information to enable this Court to determine whether he made the requisite findings, his failure to invoke an applicable standard does not, in itself, require remand."), report and recommendation adopted, No. 09-CV-6606, 2012 WL 5845539 (S.D.N.Y. Nov. 19, 2012).

Despite this legal error, there is sufficient information and analysis in the 2019 ALJ Decision for the Court to coherently apply substantial evidence review. ALJ Fein apparently addressed the first two steps of the eight-step medical improvement standard. He found a decrease in medical severity, an issue assessed at the third step, based on Dr. Buban's report. That report was in turn based on a review of Snyder's medical records spanning from his adjudicated onset date through the alleged date of medical improvement, and seven years beyond. Dr. Buban's analysis was only partially relevant for the reason the Commissioner has identified, namely that it only indirectly concerned mental functional limitations arising from physical pain. But the report did analyze the trajectory of Snyder's mental health over the relevant span of time, with the conclusion that medical improvement occurred, apparently continuously, between May 2010 and late 2016. See R. at 618. ALJ Fein's inference that medical improvement occurred on December 20, 2011, in between these two dates, was roughly based on a comparison of the periods prior and subsequent to the alleged date of medical improvement, and thus was in a functional sense faithful to the applicable legal standard.

The failures of ALJ Fein's analysis, rather, were primarily evidentiary. First, while the ALJ concluded that medical improvement occurred on December 20, 2011, the selection of this date was not supported by substantial evidence. It is well-established that to meet his burden to show medical improvement, the Commissioner must not just demonstrate a decrease in medical severity over a general time period, but must provide evidence supporting the particular alleged date of medical improvement. See, e.g., Norton v. Colvin, No. 14-CV-646S, 2016 WL 787965, at *6 (W.D.N.Y. Mar. 1, 2016) ("Plaintiff's condition may have improved sometime between his final visit to Dr. Kaplan on December 23, 2008, and the next time he sought treatment in March 2011, but setting the date of medical improvement to coincide with Plaintiff's final visit to Dr. Kaplan appears to be an arbitrary decision rather than one based on substantial evidence."); Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *7 (N.D.N.Y. Sept. 20, 2013) (holding that a finding of medical improvement was not supported by substantial evidence when "the ALJ failed to sufficiently explain the basis for January 1, 2009 as the date of medical improvement"); Van Zutphen v. Saul, No. 18-CV-57, 2019 WL 3891841, at *8 (N.D. Cal. Aug. 19, 2019) (holding the same when "the ALJ's decision contains no . . . explanation of what occurred on July 1, 2009, to render plaintiff no longer disabled, nor does the ALJ point to any medical records from this date"); Koslow ex rel. Koslow v. Astrue, No. 08-CV-159, 2009 WL 1457003, at *13 (N.D. Ind. May 22, 2009) (noting in holding that a medical report did not provide substantial evidence supporting medical improvement, that "[a]lthough Dr. Jilhewar compares the medical evidence of March 1999 with that of July 2000, his identification of August 15, 1999 as the date of medical improvement can only be described as arbitrary from a medical perspective."); Ramirez v. Colvin, No. 12-CV-498, 2014 U.S. Dist.

24

LEXIS 41746, at *25–26 (W.D. Tex. Mar. 28, 2014) ("There must be substantial evidence to support the finding that the claimant has experienced the medical improvement, upon which the new RFC is based, by the date selected by the ALJ for cessation of benefits."). Because Dr. Buban did not identify evidence of improvement in any relevant aspect of Snyder's health on or before December 20, 2011, but rather pointed to a variety of events at later dates, her report necessarily could not have justified the alleged date of medical improvement.[7]

Second, ALJ Fein ignored relevant evidence. Specifically, the ALJ neglected to mention Dr. Bordonaro's 2018 report, in which she opined based on a review of Snyder's medical records that his mental health had not improved since 2009. An ALJ's decision is not supported by substantial evidence when he, in this manner, "ignore[s] evidence supporting Plaintiff's claim while at the same time accepting evidence that supports his decision." Brown v. Comm'r of Soc. Sec., No. 15-CV-1506, 2017 WL 2312914, at *4 (N.D.N.Y. May 26, 2017) (quoting Ryan v. Astrue, 650 F.Supp.2d 207, 216 (N.D.N.Y. 2009) (citing Sutherland v. Barnhart, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004)).

Third, the ALJ improperly accorded diminished weight to a March 6, 2015 report from a treating physician, Dr. Mahesh Padmanabhan. This report documents, among other things, that Snyder's pain was severe enough to "frequently" "interfere with attention and concentration needed to perform even simple work tasks." See R. at 2298–2300. Dr. Padmanabhan's report was especially relevant, because, unlike Dr. Buban's, it directly addressed the relationship between Snyder's physical pain and his mental limitations. Moreover, Dr. Padmanabhan appears to have some background knowledge about Snyder's

---

[7] Dr. Buban points to a negative PTSD screening on February 25, 2011. R. at 3076. But this is irrelevant, as Snyder was not initially found to be disabled on that basis.

25

health, having treated him on three occasions in 2013. See Def.'s Br. at 13; R. at 1594, 2245, 2255.

As the Commissioner notes, ALJ Fein misattributed this report to a physician assistant, Jeffrey Roy. Def.'s Br. at 13; R. at 583.[8] Based on this misunderstanding, the ALJ found that the author of the report was "not an acceptable medical source," and accordingly assigned his opinion less weight. R. at 583. But Dr. Padmanabhan is an acceptable medical source.

Moreover, as a treating physician, his opinion should take precedence over Dr. Buban's, at least with respect to Snyder's condition as of March 2015. See Roma v. Astrue, 468 F. App'x 16, 18 (2d Cir. 2012) ("A treating physician's opinion is accorded "controlling weight" when it is "well[ ] supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial [record] evidence.") (quoting 20 C.F.R. § 404.1527(d)(2)). ALJ Fein found that Dr. Padmanabhan's report should be accorded minimal weight partly because it appeared to be "based on the claimant's own narrative." R. at 584. But this medical method was appropriate and unavoidable, as medical professionals necessarily discern psychiatric symptoms largely from a patient's statements. See Schuelke v. Comm'r of Soc. Sec., No. 11-CV-519, 2012 WL 1657530, at *9 (W.D. Pa. May 10, 2012) (noting in holding that an ALJ improperly discredited a psychiatric diagnosis due to its reliance on plaintiff's "subjective complaints," that "psychiatrists are highly trained in diagnosing mental disorders, and, in doing so, must necessarily rely on the statements of their patients"). For analogous reasons, the same is true to some extent with respect to physical pain, which is also largely not objectively observable. Dr. Padmanabhan's notes based on his examination of

---

[8]  To confuse matters further, ALJ Fein referred to Jeffrey Roy as Michael Roy.  R. at 583.

Snyder thus tend to undermine Dr. Buban's armchair conclusion that Snyder suffered mental limitations of continuously declining severity until 2016; and the manner in which ALJ Fein accounted for this evidentiary conflict was not faithful to the treating physician rule.

Accordingly, the Court finds that ALJ Fein's conclusion that medical improvement occurred on December 20, 2011 is not supported by substantial evidence. Among other deficiencies, ALJ Fein did not evidence the alleged date of medical improvement.

### C. Remand for the Calculation of Benefits

The Court elects to remand this case only for the limited purpose of calculating benefits, because the Commissioner could not meet his burden to demonstrate medical improvement based on the record available, because this case has been pending for a significant period of time, and because circumstances suggest that further proceedings would be fruitless.

Initially, despite the Commissioner's suggestion, ALJ Fein's formal failure to apply the medical improvement standard does not in itself necessitate remand for further administrative proceedings. See, e.g., Vargas, 2011 WL 9518014, at *12 ("In situations where the ALJ's analysis contains enough information to enable this Court to determine whether he made the requisite findings, his failure to invoke an applicable standard does not, in itself, require remand."). The Court has been provided with an administrative record from the 2019 ALJ Decision that includes a comprehensive medical record spanning from Snyder's disability onset date through well after the alleged date of medical improvement, as well as several expert reports interpreting this medical history. This is enough information for the Court to discern whether there is an evidentiary basis for a finding of medical improvement.

Reviewing the evidentiary record as a whole, the Court finds that affirmative evidence

27

of medical improvement as of December 20, 2011 is decidedly thin. First, in the entire history

of this case, no medical evidence has been offered demonstrating decreased mental limitations

*on or before December 20, 2011*. And even Dr. Buban, whose report the Commissioner

describes as "the most reliable, comprehensive, best-informed, up-to-date medical opinion

evidence in the existing record," Def.'s Br. at 3, reached only the vague conclusion that

medical severity decreased over a six-year period that includes the alleged date of medical

improvement. Further, there is evidence in the record that casts doubt even on this vague

conclusion. Namely, Dr. Bordonaro characterizes Snyder's mental health trajectory over the

same period in a contrary manner; and Dr. Padmanabhan 2015 report seems to suggest, at the

very least, less consistent medical improvement than Dr. Buban posits occurred during this

period.

      Moreover, this case has been pending for roughly ten years. Snyder has been compelled

to devote significant time and resources to litigation since the moment he applied for DIB.

Beginning with an erroneous denial of benefits upon his initial application, Snyder has endured

four ALJ decisions, one remand by this court, and two remands by the Appeals Council. He is

now litigating before this Court a second time, over six years after his first appearance. The

Court is disinclined to compel Snyder to endure months of further litigation, absent some

indication that the process is likely to reach a swift conclusion.

      And further proceedings are not likely to be productive. While the Commissioner places

great emphasis on a distinction between psychiatric evidence, which he concedes has been

thoroughly analyzed, and evidence pertaining to pain-based psychiatric symptoms, which he

asserts has not, the Commissioner overstates this distinction. The Commissioner argues that "a

physical medical expert's review of the lengthy and complex medical record, with an opinion as to Plaintiff's resulting mental functional limitations . . . would plainly help to assure the proper disposition of his claim." Def.'s Br. at 12. But because Snyder's psychiatric problems have from the start been largely intertwined with his chronic pain, Dr. Buban and other experts who have searched for evidence of a decrease in the severity of Snyder's mental impairments have already reviewed treating physicians' observations about the impact of Snyder's physical pain on his mental health. The Commissioner concedes as much, even in the course of arguing otherwise. See Def.'s Br. at 12 ("Dr. Buban's review did not address Plaintiff's physical medical treatment records, *except to the extent they captured mental health-related findings*.") (emphasis added). To the extent the Commissioner suggests that a physical medical expert could reach new conclusions about Snyder's mental symptoms based solely on inferences from physical medical evidence, this assumption is legally incorrect: under SSR No. 16-3p, the ALJ must consider the "intensity and persistence" of the mental symptoms themselves. See SSR No. 16-3p, 2016 SSR LEXIS 4 at *3. Thus, while a physical medical expert's review of the record for evidence of decreased pain-based mental limitations as of December 20, 2011 might result in an expert report with more relevant emphasis, such a review is unlikely to uncover new relevant information and is unlikely to prove the Commissioner's case.

Moreover, despite being given three opportunities to substantiate a finding of medical improvement as of December 20, 2011, the Commissioner has failed to do so. The Commissioner attributes this failure to purportedly confusing Appeals Council remand instructions and argues that clear instructions from this Court could bring this process to a swift conclusion. But as discussed, the Appeals Council instructions have been clear all along. The

Commissioner's repeated failure to substantiate medical improvement is due not to a rectifiable miscommunication within the agency, but rather, in large part, to the arbitrariness of the initial selection of December 20, 2011 as the date of medical improvement, a determination that had no evidentiary basis at the time of ALJ Greener's 2015 decision. Any ALJ's subsequent success in marshaling evidence for this date of medical improvement would have to be coincidental; and try as it might, the agency has failed to generate such a coincidence. In authorizing a third attempt to do so, the Court would be dispatching a busy ALJ on a fool's errand.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's decision discontinuing Plaintiff's DIB is **REVERSED** and the case is **REMANDED** to the Commissioner of Social Security, pursuant to 42 U.S.C. 405(g), for calculation and payment of benefits; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**[9]

DATED:       November 16, 2020
             Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[9]   Due to the delays and disruptions caused by the COVID-19 pandemic, some cases/motions were not disposed of prior to the end of the reporting period.